# THE SUPREME COURT

OF

# THE STATE OF LOUISIANA.

---

**EASTERN DISTRICT.**

## NEW-ORLEANS, APRIL TERM, 1841.

---

### LEEFE vs. WALKER ET AL.

APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

<div class="margin">

EASTERN DIS.
*April*, 1841.

LEEFE
*vs.*
WALKER ET AL.

</div>

The plaintiff is bound by the admission of the party under whom he claims, when there is no fraud or collusion alleged by him.

A party chartering a vessel is bound to the owners, and the captain as their agent, has a right to retain the whole amount out of the cargo, whether the adventure was joint or entirely owned by this party.

An attaching creditor cannot avail himself of any complaint or claim his debtors might have on a third party for damages, on account of unusual delay in a voyage.—Until they complain the plaintiff cannot attach their action for damages.

An attachment levied on the two thirds interest of the debtor in the cargo cannot avail, unless there is *a surplus*, after paying all the charges and losses on the vessel and cargo.

This is an attachment suit. The plaintiff alleges that D. and J. B. Walker of Mobile, lately trading under the firm of

Walker, Knight & Co. in New Orleans, are indebted to him in the sum of $1000. That they have a large interest in a cargo of log-wood consigned to J. Roberts & Co. in New Orleans, which he attaches and prays judgment for the amount of his claim. He propounds interrogatories to said firm and cites them as garnishees who answered, among other things that the log-wood belonged jointly to the defendants and captain Taylor, of the schooner Rosario in which it was imported from Tabasco in Mexico.

Taylor now intervened and claimed the property attached, and prayed that it be delivered up to him. John Murray also intervened.

The facts and evidence of the case as developed in the opinion of this court, exhibit the nature of the controversy and need not be recapitulated. The presiding Judge rendered judgment against the defendants for the amount of the plaintiff's demand; sustained the intervention of Taylor for the property attached; and dismissed the intervention of Murray, and also the attachment of plaintiff, who appealed.

*Micou & Lockett*, for the plaintiff and appellant, insisted that the intervenor had exhibited no proof of his claim of one third interest in the cargo, one of the depositions being rejected. But as he contends it was a joint adventure, there is an end to the charter party of the vessel, and the defendants Walker, Knight & Co. are only bound for their proportion of this charge.

2. The intervenor being the captain of the vessel has totally failed to give a satisfactory account for his great delay; having extended the voyage to 5½ months to a Mexican port. He has no right to charge the defendants with $2750 for the long delay in making the voyage.

3. The defendants owning two thirds of the cargo, the plaintiff has a privilege on the proceeds of the log-wood to this extent and which must remain subject to his attachment.

*Briggs*, for the intervenor and appellee, urged the affir- EASTERN DIS.
mance of the judgment.                                        *April*, 1841.

*Garland, J.* delivered the opinion of the court.

LEEFE
*vs.*
WALKER ET AL.

This suit was commenced by attachment; the plaintiff claims $1000 of the defendants, and cites J. Roberts & Co. as garnishees. He propounded interrogatories to them to ascertain if they have not in their possession a quantity of log-wood belonging to D. & J. B. Walker, two of the defendants, which was imported in the schooner Rosario from Tabasco, or the proceeds thereof if sold. The garnishees in their answers, say they know of no interest Walker, Knight & Co. or D. and J. B. Walker have in the log-wood. That it was consigned to them by Manuel Peyro of Tabasco, who instructed them to sell it, invest the proceeds in dry goods and ship them to his address. After the filing of these answers, the plaintiff came into court and took issue with the garnishees and again alleged the log-wood or its proceeds belong to the defendants. Some time after the joining of this issue, Josias Taylor intervened, alleging the property in the hands of the garnishees belonged to him, and if the defendants had any interest in it, he had a claim on it of a higher nature than the attaching creditor.

Some other persons were made parties to the suit, the debt was clearly proved to be owing by Walker, Knight & Co., and some funds were adjudged to be paid the plaintiff, but a judgment was given in favor of Taylor, from which the plaintiff appealed. There is no other controversy before us than the question whether the log-wood or its proceeds can be appropriated to pay the debt for which suit is brought.

In the month of February, in the year 1839, Josias Taylor being the master, and agent for the owners, of the schooner Rosario, then lying in the port of Mobile, entered into a contract with D. & J. B. Walker, by which the last named persons chartered the schooner at the rate of five hundred dollars per month to go on a trading voyage to Truxillo and thence to

# 4                    CASES IN THE SUPREME COURT

New Orleans, two thirds of the cargo belonging to the Walkers, and the other third to captain Taylor. The vessel was cleared for Truxillo, but put into Tabasco, as it was said in distress, although it seemed to have been the intention of all the parties she should go there, and the clearance for Truxillo was intended to evade the French squadron then blockading the port of Tabasco. In consequence of the manner the vessel entered the port and other causes, the captain encountered many difficulties from the custom house officers in landing and disposing of the cargo. A considerable portion of it was injured and heavy expenditures incurred in the sale of it, besides a long detention of the vessel, the voyage having lasted about five and a half months. There seems to have been a heavy loss on the adventure.

The instructions of the Walkers to captain Taylor are dated at Mobile, on the 16th February, 1839, and say, "you are hereby requested to proceed hence to the port of Truxillo, or any other port you may believe best, and make disposition of our two thirds of your cargo (as per invoice furnished,) to the best advantage, for cash, and after such disposition, you will invest the nett proceeds if any, after paying the charter of the schooner and port charges in log-wood, hides or any other article you may think best, and return with the same to New Orleans, or any other port in the United States you may believe most practicable, and dispose of the same." These instructions very specifically state the destination of the vessel, the manner of disposing of the cargo, the interest of the Walkers in it and the application of the proceeds. The evidence does not show that captain Taylor failed to comply with them or that the voyage was intentionally prolonged; but it satisfies us, all the parties contemplated a voyage in which there would be great hazard. Their purpose was to enter a blockaded port with prohibited articles, and they must necessarily have calculated on unusual risk, embarrassment and detention, and it appears the calculation was not incorrect.

The proceeds of the cargo was invested in log-wood and

EASTERN DIS.
*April,* 1841.

LEEFE
*vs.*
WALKER ET AL.

there not being enough to fill the vessel, the captain borrowed money at Tabásco to purchase an additional quantity and pledged the cargo to one Peyro for the repayment, in whose name the whole appears to have been shipped, consigned to Roberts & Co., but on the back of the bill of lading it is stated that captain Taylor is to pay Peyro $1219 60 in New Orleans, "money advanced to purchase the within express cargo, and the moment captain Taylor discharges the above sum the cargo is entirely at his own disposal." It does not appear the Walkers or the plaintiff ever paid any part of that sum, or that captain Taylor ever did, but we infer he did, as he renders an account of sales of the log-wood. That account we have examined; it appears to us fair and the defendants by it are in debt to the intervenor after having credit for the nett proceeds of the whole adventure.

But the plaintiff says, that captain Taylor did prove he had paid his third of the outward cargo. Several replies might be given to this objection, but a conclusive one is, that the Walkers in their letter of instruction, say only two thirds of the cargo, belongs to them. The plaintiff must be bound by their admissions as he claims under them and does not allege any fraud or collusion between the parties.

It is next urged that as the adventure was joint, the charter of the vessel was annulled, and the Walkers ought not to be charged with their proportion of the amount to be paid for her. No reason is given or authority cited to establish this position and it appears to us a sufficient answer, that the vessel was not the property of captain Taylor, and the sum fixed in the charter party, was for the benefit of the owners, whose agent he was and for whom he retained it, out of the proceeds of the outward and inward cargoes, as we think he was authorized to do.

It is next alleged the voyage was unnecessarily long, and that the Walkers ought not to be charged for the whole time the vessel was employed. It is possible they might have some cause to complain of this, but as they have not, we know

*The plaintiff is bound by the admissions of the party under whom he claims, when there is no fraud or collusion alleged by him.*

*A party chartering a vessel is bound to the owners, and the captain as their agent, has a right to retain the whole amount out of the cargo, whether the adventure was joint or entirely owned by this party.*

*An attaching creditor cannot avail himself of any complaint or claim his debtors might have on a third party for damages on account of unusual delay in a voyage. Until they complain the plaintiff cannot attach their action for damages.*

EASTERN DIS. of no right the plaintiff has to attach their action for damages.
*April*, 1841. Finally it is said, that as two thirds of the cargo belonged to
DIGGS, HOBSON the defendants, the proceeds are liable to the attachment of the
& co.
*vs.* plaintiff.   We have no doubt that the nett proceeds are liable,
PARISH ET AL.
and if the plaintiff had shown there was any surplus after
An attach-paying the expenses and losses incurred during the voyage,
ment levied on
the two thirds we are equally confident it would have been ordered to be paid
interest of the
debtor in the to him, by the Judge of the Commercial Court, but as he has
cargo cannot
avail, unless failed in establishing this fact, we see no error that calls for
there is *a sur-*
*plus*, after pay-our correction.
ing all the char-
ges and losses   The judgment of the Commercial Court is therefore affirm-
on the vessel ed with costs.
and cargo.